**IRON WORKERS MID–SOUTH PENSION FUND, et al.,
Plaintiffs–Appellants,**

v.

**TEROTECHNOLOGY CORP., et al.,
Defendants, Borden Chemical,
Defendant–Appellee.**

No. 89–3262.

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1990.

Rehearing and Rehearing En Banc
Denied Feb. 7, 1990.

Marie Healey, New Orleans, La., for plaintiffs-appellants.

James L. Ellis, Taylor, Porter, Brooks & Phillips, Thomas R. Peak, John F. McDermott, Baton Rouge, La., for defendant-appellee.

Before LIVELY,[1] JOLLY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Employee benefit funds appeal from the dismissal of their suit to enforce liens recorded against Borden's Geismar plant pursuant to the Louisiana Private Works Act for employee benefit plan contributions owed by Borden's contractor, Terotechnology. The district court dismissed under Fed.R.Civ.P. 12(b), holding that insofar as it pertained to employee benefit plans, the Private Works Act was preempted by ERISA. 29 U.S.C. § 1001 *et seq.* Because the Private Works Act creates an additional method for enforcing the funding requirements of employee benefit plans it is preempted, and we affirm.

I

On March 26, 1973, Borden Chemical entered into a plant maintenance services contract with Terotechnology Corporation for

---

1. Circuit Judge of the Sixth Circuit, sitting by designation.

work to be performed at its Geismar, Louisiana plant. On January 6, 1985, the Baton Rouge Building and Construction Trades Council, on behalf of three unions, executed a collective bargaining agreement with Terotechnology for work to be performed at the Borden jobsite in Geismar. This agreement required Terotechnology to submit fringe benefit contributions to nine employee benefit funds for each hour worked by its employees under that agreement at the Borden jobsite, and to deduct dues from their wages for forwarding to the unions.

Terotechnology did submit reports and contributions to the funds and the unions in accordance with its collective bargaining agreement through the middle of 1986. But thereafter, for the period August 1986 through January 1987, Terotechnology failed to fulfill its obligations under the collective bargaining agreement. Following Terotechnology's default on its contract with Borden, Borden terminated the agreement on February 14, 1987. Liens were timely filed by the unions and funds under the Louisiana Private Works Act on the public records of Ascension Parish, against both Borden, as owner of the property on which the work was performed, and Terotechnology, as the contractor and employer, for the amounts owed by Terotechnology.

On August 5, 1987, the unions and funds filed a delinquency action to recover the delinquent contributions and dues from Terotechnology. This action was asserted pursuant to § 515 and § 502 of ERISA and § 302(c)(5) of the LMRA. The unions and funds also sued Borden seeking to enforce the liens recorded against the Geismar plant for fringe benefit contributions and dues owed by Terotechnology.

On September 29, 1987, Borden filed a motion to dismiss, contending that the district court lacked jurisdiction over the unions' and funds' claims against it. The unions and funds asked the court to exercise pendent jurisdiction over their state law claims based upon the federal claims against Terotechnology. A default judgment was entered against Terotechnology on November 5, 1987. On November 16, 1987, the district court denied Borden's motion to dismiss.

On July 29, 1988, Borden filed a second motion to dismiss the unions' and funds' claims pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, contending that the complaint failed to state a claim upon which relief could be granted against Borden because ERISA § 514(a) expressly preempts state laws such as La.R.S. 9:4801 *et seq.*, which relate to employee benefit plans. Borden also argued that under the facts of this case no cause of action existed against it under ERISA because it was not an "employer" who can be sued for delinquent contributions under ERISA. The unions and funds opposed this motion, contending that their claims were not preempted, but they conceded that no ERISA cause of action existed against Borden.

On December 2, 1988, *Iron Workers Mid–South Pension Fund v. Terotechnology Corp., et al.*, 700 F.Supp. 310 (M.D.La. 1988), Borden's Rule 12(b) motion was granted and the claims of six funds were dismissed. The district court held that the Private Works Act was preempted by ERISA insofar as it was applied to employee benefit plans. Subsequently, the claims of the remaining unions and funds were voluntarily dismissed with prejudice, and final judgment was entered by the district court on March 27, 1989. Only the Iron Workers Mid–South Pension Fund, Laborers National Pension Fund, and Louisiana Laborers Health & Welfare Fund appealed the district court's decision.

## II

### A. *Jurisdiction*

■ The parties assert two possible bases for federal jurisdiction. First, the parties assert that there is "pendent party" jurisdiction over the funds' state law cause of action against Borden. They argue that since the federal court had jurisdiction over the federal claims against Terotechnology, it also had jurisdiction over state law claims against nondiverse Borden because the claims arose out of a common nucleus of operative fact. This is not correct in light of the Supreme Court's recent decision in *Finley v. United States*, —— U.S.

——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Although the claims brought by the funds against Terotechnology were exclusively federal,[2] there was no independent ground for subject matter jurisdiction over Borden.

"As regards all courts of the United States inferior to [the Supreme Court], two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it....* To the extent that such action is not taken, the power lies dormant."

*Finley,* 109 S.Ct. at 2006, quoting *The Mayor v. Cooper,* 6 Wall. 247, 252, 18 L.Ed. 851 (1868). The Supreme Court held in *Finley* that while pendent-party jurisdiction may pass constitutional muster, it has not been congressionally authorized. *Id.* 109 S.Ct. at 2006–07. It is not enough to confer jurisdiction over pendent parties that the plaintiff's case against one defendant can only be brought in federal court. *Id.* at 2008. ERISA § 502(e), 29 U.S.C. § 1132(e), provides that "... the district courts of the United States shall have exclusive jurisdiction of civil actions *under this subchapter* brought by ... [a] fiduciary" (emphasis added). ERISA does not authorize suits against property owners to enforce liens against the property to aid collection of delinquent contributions, however, so there is no statutory grant of jurisdiction over parties such as Borden.

Alternatively, Borden asserts that this case comes within the rule of *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), as that rule was recently applied by the Supreme Court to certain ERISA preemption defenses in *Metropoli-*

*tan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). *Avco* holds that a state law cause of action is a well-pleaded federal claim when Congress has so completely preempted an area of the law that any civil complaint raising this select group of preempted claims is necessarily federal in character. In *Taylor* the Supreme Court held that under *Avco* a state law cause of action that is within the scope of the civil enforcement provisions of ERISA § 502(a) was a well-pleaded federal claim. *Id.* 107 S.Ct. at 1548.

Section 502(a), 29 U.S.C. § 1132(a) provides:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ....

The funds are fiduciaries, and attempt to enforce the provisions of ERISA, specifically § 515, 29 U.S.C. § 1145[3], and § 502(g)(2), 29 U.S.C. § 1132(g)(2).[4] The

---

**2.** The Funds are fiduciaries under § 502(a)(3) and were suing to enforce the terms of the plans. *See* 29 U.S.C. § 1132(e)(1); *Livolsi v. Ram Construction Co.,* 728 F.2d 600, 602 (3d Cir.1983).

**3.** *§ 515, 29 U.S.C. § 1145 provides:*

§ 1145. Delinquent contributions

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such

contributions in accordance with the terms and conditions of such plan or such agreement.

**4.** *§ 502(g)(2), 29 U.S.C. § 1132(g)(2) provides:*

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgement in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

suit by the funds under the Louisiana Private Works Act is preempted because the claims for delinquent contributions are within the scope of the civil enforcement provisions of ERISA, which are exclusive. *Taylor* holds that the federal courts have jurisdiction over such suits. 107 S.Ct. at 1548.

## B. *Preemption*

Section 514(a) of ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Section 514(c) defines the terms used in § 514(a):

(1) The term "State law" includes all law, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

(2) The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

29 U.S.C. § 1144(c).

The funds contend that these statutory provisions require that a two-prong test be used to determine if a state law is preempted by § 514(a). The state law must "relate to" a plan *and* must "purport to regulate, directly or indirectly," its terms or conditions. They argue that, as applied in this case, the Louisiana statute, although it may relate to employee benefit plans, does not purport to regulate their terms.

The Second and Ninth Circuits have read § 514(c)(2)'s definition of "state" to impose a limitation upon the "relate to" language of § 514(a). *See Local Union No. 598 v.*

*J.A. Jones Constr. Co.,* 846 F.2d 1213, 1218 (9th Cir.), *aff'd,* —— U.S. ——, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988); *Martori Bros. Distribr. v. James–Massengale,* 781 F.2d 1349, amd. 791 F.2d 799 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 385 (1986); *Rebaldo v. Cuomo,* 749 F.2d 133, 137 & n. 1 (2d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985); *Lane v. Goren,* 743 F.2d 1337, 1339 (9th Cir.1984); *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323, 329 (2d Cir.1982), *aff'd mem. sub nom., Arcudi v. Stone & Webster Engineering Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983). In *J.A. Jones* the court stated that "[t]he narrower 'purports to regulate' test is included within the broader 'relates to' test." 846 F.2d at 1218, citing *Martori Bros.,* 781 F.2d at 1359.

The only Supreme Court case mentioning the definition of "state" is *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), in which the Court addressed whether a New Jersey law purporting to prohibit the reduction of a retiree's pension benefits by the amount of workers' compensation benefits he received before retirement was preempted by ERISA. While rejecting the Court of Appeals' rationale, which focused on the purpose of the New Jersey law, the Court affirmed its finding of preemption, concluding that the New Jersey statute related to employee benefit plans "because it eliminate[d] one method for calculating pension benefits—integration—that is permitted by federal law." *Id.* at 524, 101 S.Ct. at 1906. The Court also stated:

It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law, rather than directly, through a statute called 'pension regulation.' ERISA makes clear that even indi-

---

(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.
For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

rect state action bearing on private pensions may encroach upon the area of exclusive federal concern. For the purposes of the preemption provision, ERISA defines the term 'State' to include: 'a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, *directly or indirectly*, the terms and conditions of employee benefit plans covered by this subchapter.' 29 U.S.C. § 1144(c)(2) (emphasis added). ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the preemption provision. *Id.* at 525, 101 S.Ct. at 1907 (emphasis in original). Thus, it is irrelevant that the Louisiana Private Works Act is a lien statute, indirectly affecting pension plans, rather than a statute directly regulating pension plans.

The ERISA preemption decisions by the Supreme Court have limited their discussion to the "relate to" language of § 514(a), reading that language broadly. *See, e.g., Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) (asserting that a law relates to an employee benefit plan if it "has a connection with or reference to such a plan"). Following *Pilot Life,* this court noted the breadth of the preemption language of § 514(a) in *Cefalu v. B.F. Goodrich Co.:*

> [C]ourts have broadly construed the words 'relate to' in order to give the proper effect to the preemption language of ERISA.... ERISA's preemption clause should not 'be interpreted to preempt only state laws dealing with the subject matters covered by ERISA.' Instead, ERISA's preemption of state law claims 'depends on the conduct to which such law is applied, not on the form or label of the law.' The courts have indicated that 'even indirect state action bearing upon private pensions may encroach upon the area of exclusive federal concern.' Because of the breadth of the preemption clause and the broad remedial purpose of ERISA, 'state laws found to be beyond the scope of [§ 514(a) ] are few.'

871 F.2d 1290, 1293–94 (5th Cir.1989) (citations omitted). Borden contends that *Cefalu, Pilot Life,* and the other Supreme Court cases interpreting § 514(c), require only that a law relate to employee benefit plans to be preempted, and preclude a two-prong test under § 514(a).

■ We need not decide in this case whether or not the two-prong test must be met in order for a state law to be preempted by ERISA, for the Louisiana Private Works Act is preempted under either the two-prong test or the broader "relates to" test. By its terms the Private Works Act relates to employee benefit plans. It also purports to regulate such plans, because it provides a supplemental enforcement mechanism to those provided by Congress. It does not specifically require that certain terms be included in a plan, but it does purport to regulate the conditions under which the terms of a plan can be enforced by creating an additional entity that can be liable for contributions to the plan.

In *Martori Bros.,* the Ninth Circuit discussed the kinds of state laws which have been found to "relate to" employee benefit plans:

> The state laws that have previously been found to be preempted by section 514(a) because they 'relate' to ERISA plans fall into four categories. First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common law rules that provide remedies for misconduct growing out of the administration of the ERISA plan. The principle underlying all of these decisions would appear to be that the state law is preempted by section 514(a) if the conduct sought to be regulated by the state law is 'part of the administration of an employee benefit plan': that is, the state law is preempted if it regulates the matters regulated by ERISA: disclosure, funding, reporting, vesting, and enforcement of benefits plans.

781 F.2d at 1357–58 (footnotes omitted). The funds suggest that the Private Works Act is distinguishable from all of the statutes which previously have been found to be preempted by ERISA, because it does not "regulate[ ] the matters regulated by ERISA: disclosure, funding, reporting, vesting, and enforcement of benefit plans." *Id.* at 1358.

The funds' contention is clearly incorrect because the Private Works Act specifically attempts to regulate the funding of employee benefit plans, and attempts to provide an enforcement mechanism not provided by ERISA. The Second and Ninth Circuits have held that when a law "add[s] an additional statutory requirement ... to a private employee benefit plan" it is clearly preempted by ERISA. *Local Union 598 v. J.A. Construction Co.*, 846 F.2d at 1219; *Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d at 329.

In *Carpenters Southern California Admin. Corp. v. El Capitan Serv. Co.*, 197 Cal.App.3d 790, 243 Cal.Rptr. 132 (Cal.App. 1988), *cert. granted*, 246 Cal.Rptr. 209, 753 P.2d 1 (1988), the California Court of Appeals held that the California mechanics' lien law, which specifically provided a lien right against real property for supplemental fringe benefit payments owed to employee trust funds pursuant to a collective bargaining agreement, was preempted by ERISA.[5] Although the court had earlier concluded that the lien statute was not preempted, it was ultimately persuaded to reverse its decision following the California Supreme Court's transfer of the appeal to it for recommendation as to the impact of

*Pilot Life.* The court concluded that the *Pilot Life* decision could not be read without determining that "the high court was purposely broad in its view of preemption." *El Capitan*, 197 Cal.App.2d at 795, 243 Cal.Rptr. 132. The court read *Pilot Life* as establishing the principle that ERISA's § 502 remedies are exclusive, requiring displacement of any state law affording a parallel remedy. *Id.* at 796, 243 Cal.Rptr. 132. The court stated:

> Although a state law providing for mechanics' liens is a special statutory collection alternative, that remedy cannot be divorced from the substantive contractual rights which create the debt. To be effective, the lien claim depends upon the validity and consequences of an agreement of some sort. In this instance, a labor agreement is the subject matter. Failure of one party to the plan to make contributions results in the denial of benefits to the others. Federal remedies are provided. Mechanics' lien rights are omitted.

*Id.*

The funds argue that we should not adopt the *El Capitan* court's reading of *Pilot Life.* They assert that *Pilot Life* cannot be read to preempt state law actions to collect delinquent contributions, since the § 502 enforcement scheme before the Court in *Pilot Life* was only determined to be the exclusive mechanism for enforcing the claims of a participant or a beneficiary involving improper claim processing by a plan or other benefit-related claims against a plan.[6] *Pilot Life* dealt primarily with the

---

5. There have been four state cases addressing the preemption of a state lien statute by ERISA. Two have determined that the lien statutes were not preempted, *Plumbers Local 458 Vacation Fund v. Howard Immel, Inc.*, 151 Wis.2d 233, 445 N.W.2d 43 (Wisc.Ct.App.1989); *Carpenters Health & Welfare Trust Fund v. Parnas Corp.*, 176 Cal.App.3d 1196, 222 Cal.Rptr. 668 (Calif.Ct. App.1986), and two have found preemption. *El Capitan, supra; Prestridge v. Shinault*, 552 So.2d 643 (La.App.2d Cir.1989). In *Parnas*, the court considered whether ERISA preempted California Civil Code § 3111, a statute similar to Louisiana's Private Works Act. Using the two-prong test, the court concluded that "ERISA *does preempt* any state interference, directly or indirectly, in respect of the 'terms and conditions' of

employee benefit plans; it *does not preempt* state lawsuits ... to 'enforce' such 'terms and conditions,' and thus recover delinquent ERISA contributions." *Id.* 176 Cal.App.3d at 1198, 222 Cal.Rptr. 668, 7 EBC at 1034. *Parnas* was decided before the Supreme Court's decisions in *Pilot Life* and *Taylor*, and was not followed by the California court in *El Capitan.*

6. The argument that only laws relating to benefits, and not contributions, are preempted was rejected by the Ninth Circuit in *Local Union 598 v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1219 (9th Cir.1988). The court held that "[t]his 'contribution/benefit' dichotomy, while superficially appealing is unsupported by the law." *Id.*

enforcement provisions of § 502 as they related to suits by participants and beneficiaries for benefits, and did not specifically address whether the enforcement scheme giving a plan and its trustees a right of action against a contributing employer provides the exclusive mechanism for collecting delinquent contributions. Nonetheless, the reasoning behind *Pilot Life*'s holding that ERISA preempted the participant's state law claims for enforcement of the plan applies equally well to the present case. The Supreme Court noted that "the express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life*, 107 S.Ct. at 1552, quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme.... The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."

*Pilot Life*, 107 S.Ct. at 1556, quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). It is no different when the claim is one for delinquent contributions brought by a fund or trustee. One of the "six carefully integrated civil enforcement provisions found in § 502(a)" is § 502(a)(3), which provides that a civil action may be brought:

> (3) by a participant, beneficiary or *fiduciary* ... (B) to obtain other appropriate

equitable relief (i) to redress such violations or (ii) *to enforce any provisions of this subchapter or the terms of the plan.*

29 U.S.C. § 1132(a)(3) (emphasis added). This is precisely the type suit brought by the funds—a civil action by a fiduciary to enforce the provisions of ERISA with regard to employer contributions, i.e. § 515, 29 U.S.C. § 1145, and to enforce the terms of the plan, i.e. the funding contributions required by the collective bargaining agreement. The Louisiana Private Works Act is therefore preempted because it attempts to supplement the exclusive civil remedies provided by ERISA.

The funds make several additional arguments. First, they argue that the Louisiana Private Works Act comes within the rule of *Mackey v. Lanier Collections Agency*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), as an aid to the enforcement of a judgment. In *Mackey*, the Court held that Georgia's garnishment statute, as a generally applicable mechanism for the enforcement of judgments, was not preempted by ERISA. Under *Mackey*, state law enforcement mechanisms can be used to collect judgments against plan participants from funds due participants through ERISA benefit plans. 108 S.Ct. at 2188. In *Plumbers Local 458 Holiday Vacation Fund v. Howard Immel, Inc.*, 151 Wis.2d 233, 445 N.W.2d 43 (App.1989), the court relied on *Mackey* in holding that a Wisconsin lien statute was not preempted by ERISA, reasoning that "a decision holding that no general creditor's remedies may be utilized to collect judgments held by ERISA-regulated plans would be unfathomable." *Id.* 445 N.W.2d at 46. We are unpersuaded by the Wisconsin court's analysis, for the lien statutes involved do more than provide remedies for collecting judgments; they create substantive rights. The Louisiana Private Works Act gives ERISA plans as well as employees and laborers rights against not only employers, but property owners such as Borden.[7] Sig-

---

7. The Louisiana Private Works Act provides, in pertinent part:

> Amounts owed under collective bargaining agreements with respect to a laborer's or em-

> ployee's wages or other compensation for which a claim or privilege is granted and which are payable to other persons for vacation, health and welfare, pension, apprentice-

nificantly, in holding that it was not preempted, the *Mackey* Court noted that the Georgia garnishment statute "creates no substantive causes of action, nor new bases for relief, or any new grounds for recovery; [it] does not create the rule of decision in any case affixing liability." *Id.* 108 S.Ct. at 2188 n. 10. Louisiana's Private Works Act cannot be brought under the authority of *Mackey,* because without it Borden, who is not an employer, would not be liable to the funds. The Private Works Act creates a substantive right against the property owner that is not created by ERISA, and goes beyond being merely a means of enforcing a judgment.

Second, the funds argue that if the Louisiana Private Works Act does affect the federal scheme contemplated by ERISA at all, it does so in too tenuous, remote, and peripheral a manner to trigger preemption. They rely on a statement in *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983), to the effect that laws affecting the ERISA scheme only remotely would not be preempted. The statement in the *Shaw* footnote has been applied in few cases and is not applicable here. The Private Works Act does not merely remotely or tenuously affect ERISA plans, but has a substantial effect, for it creates an additional party who can be liable to plans for contributions.

Third, the funds argue that the legislative history of ERISA indicates that Congress intended to preserve state lien laws as a plan remedy. However, the legislative history cited by the funds is ambiguous at best, and does not indicate that there was any intention of allowing states to create new substantive rights.

Finally, the funds argue that even if the Louisiana Private Works Act would otherwise be preempted by § 514(a), it is saved by § 514(b)(2), the insurance savings

clause. This argument is meritless. Applying the three criteria used by the courts to determine whether a state law is "saved," it is clear that the Louisiana statute does not regulate insurance. The law does not have the "effect of transferring or spreading a *policy holder's risk*"; the law is not "an integral part of the *policy relationship*"; and the law is clearly not "limited to entities within the *insurance industry.*" *See Pilot Life,* 107 S.Ct. at 1553–54, citing *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982). The Private Works Act has nothing to do with insurance, and is not saved from preemption on this basis.

### III

The Louisiana Private Works Act relates to ERISA plans by its terms, as it provides an alternative method to enforce the collection of contributions owed to plans. It also purports to regulate the terms and conditions of plans by creating an additional party other than an employer who can be held liable for those contributions. Therefore, the Louisiana Private Works Act is preempted by ERISA. The Act does not merely create the right to use a lien to enforce a judgment, nor is its effect on the federal scheme tenuous, remote, or peripheral. Finally, the Act is not "saved" from preemption by the insurance savings clause, for it has nothing to do with insurance. Accordingly, the district court was correct in dismissing the complaint against Borden.

AFFIRMED.

ship and training, supplemental unemployment benefits, and other fringe benefits considered as wages by the secretary of labor of the United States in determining prevailing wage rates, unless the immovable upon which the work is performed is designed or intended to be occupied primarily as a residence by four families or less. Trustees, trust funds, or

other persons to whom the employer is to make such payments may assert and enforce claims for the amounts in the same manner and subject to the same procedures provided for other amounts due laborers or employees granted a claim or privilege under this part. La.Rev.Stat.Ann. § 9:4803(A)(3) (West 1983).